N. O. WHITLOCK, Appellee, v. H. S. BERRY and W. S. FALL, Appellants.

**Landlord and tenant:** COVENANT TO FENCE: CONSTRUCTION. The provisions of a lease requiring the lessor to keep the fences in sufficient repair to turn cattle, and to be of not less than three wires, is held to require an exercise of skill, care and prudence in the construction and maintenance of fences of that character, which may reasonably be expected to turn cattle under ordinary circumstances in pasturing stock in that vicinity; and not as constituting the lessor an insurer that the fences would be kept in such condition as to restrain cattle under all circumstances.

**Same:** REASONABLE CARE: INSTRUCTION. The standard of care in the construction and maintenance of farm fences which will turn cattle is that care exercised by prudent persons in the vicinity or neighborhood, and should not be restricted to the usage in the county; but as the witnesses in the instant case qualified by showing familiarity with local conditions, and no special objection was made because of the reference to the county instead of the neighborhood, the court's definition of reasonable care was not prejudicial.

**Same:** EVIDENCE. In an action for the breach of a lessor's covenant to construct and maintain fences sufficient to turn cattle, the evidence of farmers familiar with the care and restraint of cattle in fenced pastures is competent.

*Appeal from Monroe District Court.*—HON. F. M. HUNTER, Judge.

SATURDAY, MARCH 15, 1913.

ACTION at law to recover payment of rent as stipulated in a written lease. There was a verdict and judgment for plaintiff, and defendants appeal.—*Affirmed.*

*Townsend & Miller,* for appellants.

*Fred C. Huebner,* for appellee.

)

WEAVER, C. J.—By the terms of the written lease plaintiff let to defendants the grass and pasture land on certain designated tracts for the season of 1910 at the agreed rent of $2.50 per acre. The leased land was estimated at two hundred acres, but it was stipulated that the true area was to be ascertained by measurement. Among the obligations assumed by the lessor was one stated in the following words: "First party is to keep the fences on and around said farm owned by him in sufficiently good repair to turn cattle during the term of this lease and to notify adjoining owners in the event that their part of the fences becomes in bad condition, to repair them and do all in his power to have said adjoining owners to keep their shares of partition fences in repair. He is not, however, to be held liable for any damage that may be caused second parties in case some person, without his knowledge or consent, cuts or tears down the fences and causes damage to the second parties. The fences owned and controlled by first party are not to be less than three wires and to be sufficient to turn cattle." This action was begun after the term of the lease expired; the plaintiff alleging in his petition that the agreed rent was due and unpaid. For answer thereto defendants alleged that the actual amount of land leased to them did not exceed about one hundred and seventy-one acres, and aver their readiness to make payment on that basis, deducting from the amount of rent earned the damages they claim to have sustained by reason of an alleged breach of plaintiff's agreement to keep and maintain the fences inclosing the land in condition to keep and restrain cattle. By way of counterclaim they allege the breach of said agreement by plaintiff by reason of which they were compelled to remove their cattle from the pasture, to the damage of defendants in the sum of $175. They further aver that as plaintiff well knew they leased said lands for the purpose of pasturage for their cattle, and to that end he especially agreed to put and keep the fences in such condition as might be necessary to turn cattle, a duty which he failed to perform, and by reason of such failure

the rental value of the premises was injured and lessened to the extent of $1 per acre, and they ask a recovery accordingly. The contention is denied by the plaintiff.

I. As to the amount of land actually leased, the evidence of surveys tends to show that it is not less than one hundred and seventy nor more than one hundred and seventy-three acres. The jury returned a verdict for plaintiff for an amount which appears to have been computed on the basis of one hundred and seventy acres at the contract price of $2.50 per acre, and, if we assume that defendants failed to establish their counterclaim, this finding is not open to any just criticism.

II. The facts in dispute relate principally to the condition of one of the fences about one thousand feet in length inclosing the pasture, and separating it from a field of corn belonging to a third person. The testimony of the defendants in which they have more or less support from several witnesses tends to show that the fence in question was made of barb wire attached to wooden posts; that it had for the most part four strands of wire, and at no place less than three; that the wire was old, weak, broken in some places, and patched in others and loosely stretched; that the posts were old and rotten, and would not hold the staples firmly, were not placed sufficiently near together to make a reasonably sufficient fence, and that such fence would not, and did not, afford a barrier which would turn cattle. They further say that, owing to these conditions, their cattle broke through or over said fence on different occasions, that plaintiff was notified of such fact, and made some effort to repair the fence, but it still remained insufficient to restrain the cattle, for which reason defendant abandoned the use of the pasture from August till November after the corn in the neighboring field had been removed. There is testimony tending to show that, because of the matters thus complained of, the rental value of the land was diminished to an amount not less than $1 per acre.

On the part of plaintiff, the showing made is, in sub-

stance, that the fence contained four strands of wire tightly strung on good posts set at intervals of about one rod; that the posts were in part new; that the fence showed no defects of condition except a single post or two which could have been repaired or replaced at slight expense; that, upon being notified of the escape of defendant's cattle, plaintiff repaired the fence at once, and that it was at all times in reasonably fit condition to turn cattle.

The foregoing is a sufficient statement of the evidence to make plain defendant's assignments of error upon the court's refusal to instruct the jury as requested, and upon certain parts of the instructions given. Among the instructions asked by the defendants were the following:

(1) Under the contract between the plaintiff and the defendants, it was the duty of plaintiff at all times during the term of the lease to "keep the fences on and around the said farm owned by him in sufficiently good repair to turn cattle," the said fences being not less than three wires and to be "sufficient to turn cattle." This does not mean that he was to make and keep the fences on and around the farm sufficient to turn what are known as "breachy cattle," but sufficient to turn ordinary cattle, and to keep them on the farm during the term of the lease.

The uncontradicted evidence of this case is that a part of the fences on said farm were not sufficient to turn cattle, and that the cattle of defendants went through and into an adjoining cornfield on lands owned by plaintiff. The fact that the cattle of defendants during the term of the lease went through this fence, and were not turned away by it, is conclusive evidence that the fences on and around the farm were not sufficient to turn cattle, and that there was a breach of the contract by plaintiff, provided you find by the greater weight of preponderance of the evidence that the cattle defendants had on the place and that went through the said fence or fences were not breachy cattle. . . .

(4) It was the duty of the plaintiff under the contract to keep on and around said farm fences sufficient to turn cattle. The fact that the fences did not turn cattle is conclusive evidence that the fences were not sufficient for that

purpose, and defendants are entitled to recover whatever damages, if any, they may have sustained because of the failure of plaintiff to keep said fences as required by the contract, provided, however, that it is not shown by the greater weight or preponderance of the evidence that the cattle of defendants that went through the fence were what are known as breachy cattle.

These requests were refused, and upon its own motion the court charged the jury that, as those words are used in the contract of lease, "fences sufficient to turn cattle" are such fences as "persons in Monroe county, Iowa, exercising a reasonable degree of care, attention, skill, and prudence construct and keep in repair to keep ordinary native cattle of all ages and sizes within enclosures used for pasturing such cattle." In another paragraph the jury were told that the terms of the contract bound the plaintiff to put and keep the fences in condition sufficient to turn cattle, and that in the discharge of this obligation the standard of due performance on his part is such as is observed or used by persons of ordinary prudence in like circumstances. Proceeding along this line of thought, the court placed upon the plaintiff the burden of showing the exercise of such diligence and care upon his part, and, further, charged that, if plaintiff had thus shown by a preponderance of the evidence the performance of his duty under the contract, then he was entitled to receive the full agreed rental at the rate of $2.50 per acre, even though it should appear that the cattle on one or more occasions broke through or over the fence. These propositions were repeated in various forms of expression in other paragraphs of the charge and to each an exception is taken by the defendants."

As will be noted, these exceptions raise the question as to the proper construction to be placed upon the lease. It is the position of the defendants that plaintiff did not simply undertake to exercise care, skill, and prudence in the construction and maintenance of fences of the prescribed character, but that

1. LANDLORD AND TENANT: covenant to fence: construction.

he expressly warranted or undertook the absolute duty to make and keep them in such condition as would restrain ordinary cattle. Consistently with this theory, it is further contended that proof or admission that the cattle did break through or over the fence is a conclusive showing that said warranty or obligation has been broken. While the question is by no means free from doubt, and the position taken by defendants may be supported by plausible argument, we are of the opinion that plaintiff cannot be held to the obligation of an insurer or warrantor that the fence would under all circumstances restrain defendants' cattle. In the very nature of things repairs imply a condition of some degree of decay, a deterioration from a previous condition of greater strength and security. If there were no decay or weakness to remedy or provide against, there would be no occasion to strengthen or repair. A covenant or agreement to keep anything of a perishable nature in a given condition or a given state of repair implies of necessity the exercise of an appropriate degree of care to discover and remedy defects. As applied to this case, we think there is no expression or implication of a warranty that the cattle shall not break through or over the fence, but rather an undertaking that plaintiff shall maintain a fence of not less than three wires in a condition which ought, and may reasonably be expected, to turn cattle under any circumstances which may fairly be anticipated in the pasturing of such herds in that vicinity. The very fact that the parties stipulated for a minimum of three strands of wire lends much force to this construction. Had defendants been relying upon plaintiff's obligation as a warranty or insurance of the strength and efficiency of the fence, it would not have been of material importance to them whether the fence was made of three or four or more wires. It is a matter of common observation that wire fences of three strands, even when well built, do not always and invariably turn cattle, and that cattle of ordinary gentleness and tractability will at times break through such barriers. When,

therefore, the parties recognize by their contract that such a fence may be sufficient to satisfy the obligation assumed by the plaintiff, it is a fair inference that they contemplate no more than the exercise on his part of all reasonable vigilance, effort, and care that such fence shall be so made and so kept that it will serve its intended purpose—the restraint of defendants' cattle.

While the precedents cited by counsel on either side are only indirectly applicable to the case before us, our conclusions find some support in *Thomas v. Kingsland,* 108 N. Y. 616 (14 N. E. 807); *Bunker v. Pineo,* 86 Me. 138 (29 Atl. 959; *Frank v. Conradi,* 50 N. J. Law, 23 (11 Atl. 480); *School Dist. v. Swearingen,* 119 Iowa, 702 (94 N. W. 206). The case of *Vincent v. Crane,* 134 Mich. 700 (97 N. W. 34), decided by the Michigan court and cited by appellants, does not present a parallel proposition. There the tenant agreed to turn back the building at the end of his term in as good condition as at the date of the lease, and the court held that the condition of the building at the end of the term having been agreed upon as the standard the tenant could not excuse a failure to comply therewith by a showing that he exercised reasonable care to preserve the building in that condition. This may be admitted to be the law without in any manner departing from the rule applied by us in this case.

Moreover, it is pertinent to inquire concerning the natural interpretation to be put upon the words, "to turn cattle." It seems to us quite clear that to make this phrase the equivalent of "to prevent the escape of ordinary cattle under any and all circumstances" cannot be justified. It enlarges upon and amplifies the language of the parties, and gives it an effect which we cannot assume was within their contemplation. A fence which is sufficient to turn cattle under ordinary circumstances may prove little better than a cobweb to restrain the same animals when greatly frightened or impelled by the stress of hunger or thirst. There is nothing in the situation of these parties or in the nature of the trans-

action between them to suggest that they believed that plaintiff was taking upon himself such an extraordinary obligation.

Turning next to the defendants' exception to the trial court's definition of "reasonable care" by the plaintiff as being the degree of care which careful and prudent persons in Monroe county usually exercised under like circumstances, we may say that the instruction is not happily phrased. Questions of ordinary care may generally be considered in the light of the usage and conduct of prudent persons generally in the vicinage and surroundings and acting under the same or similar circumstances. But vicinage for that purpose is not always to be restricted or defined by the boundaries of a county, and we regard it as the safer and better rule, when pursuing that line of inquiry, to direct the attention of the witnesses to the vicinity or neighborhood where the contract is to be performed and not simply to the county. The expression we have criticised does not, however, call for any reversal of the judgment below. The defendants themselves were careful to qualify their witnesses by showing their long residence and their familiarity with conditions in Monroe county, and, when plaintiff's witnesses were asked as to what was regarded among farmers of Monroe county as a fence sufficient to turn stock, no special objection seems to have been made because of the reference to the county instead of the neighborhood. Again, it is quite clear from the record that all of the witnesses testifying along these lines were speaking of fences and restraint of cattle in the community in which this property is situated, and we see nothing in any of the testimony or in the instructions of the court as relates to these matters which could have prejudiced the interests of the defendants.

2. SAME: reasonable care: instruction.

Certain witnesses were permitted over defendants' objection to testify what in their judgment constituted a fence sufficient to turn cattle, and of this ruling complaint was also made. We think the evidence was competent. The court could properly instruct the jury

3. SAME: evidence.

as to the construction of the contract, but obviously it could not undertake to say that such a fence must be of any given material or constructed according to any specific pattern. Farmers who are familiar with the care and restraint of cattle in fenced pastures are certainly better qualified to say what fence does ordinarily serve to keep such animals within bounds than a juror who may be a mechanic or merchant or banker wholly without experience in such matters. The exception to the testimony must be overruled. That the actual condition of the fence was under the testimony a question for the jury must be admitted, and we cannot interfere with the verdict so far as it relates to that fact.

Some other matters are argued by counsel, but they are so far controlled by the considerations we have already mentioned that we shall not prolong this opinion for their more specific mention. It is enough to say that in our opinion there is nothing in the record which will justify us in sending the case back for a new trial.

The judgment of the district court is *Affirmed.*